UNION NAT. BANK OF FRANKLINVILLE v. DEAN et al.

(Supreme Court, Appellate Division, Fourth Department. January 8, 1913.)

1. EVIDENCE (§ 445\*)—PAROL EVIDENCE—DISSOLUTION OF PARTNERSHIP.

Though a partnership agreement be written, its dissolution may be shown by parol.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2052–2065; Dec. Dig. § 445.\*]

---

2. PARTNERSHIP (§ 296*)—INDIVIDUAL LIABILITY—EVIDENCE OF DISSOLUTION.

Since one receiving a firm note could recover thereon against a partner unless there had been an actual dissolution of the firm, though the indorsee believed there had been a dissolution before the note's execution, in an action to charge defendant on a note signed by a firm of which he was a member, parol evidence as to dissolution was admissible for determining whether the firm was dissolved before the note was made.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 662, 663, 666–678; Dec. Dig. § 296.*]

3. PARTNERSHIP (§ 296*)—INDIVIDUAL LIABILITY—ACTIONS—JURY QUESTION —NOTICE OF DISSOLUTION.

In an action to charge defendant with liability on a note which purported to be signed by a firm of which defendant was formerly a member, evidence *held* to make it a jury question whether plaintiff had notice of the firm's dissolution when it received the note.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 662, 663, 666–678; Dec. Dig. § 296.*]

4. PARTNERSHIP (§ 291*)—DISSOLUTION—NOTICE.

Constructive notice of the dissolution of a partnership is sufficient as to persons not having previously dealt with it, but actual notice must be given to persons who had dealt with it.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 657–660; Dec. Dig. § 291.*]

5. PARTNERSHIP (§ 290*)—DISSOLUTION—NOTICE—SUFFICIENCY.

No formal notice of the dissolution of a partnership need be served to relieve the partners from individual liability; knowledge of facts leading one to believe that it had been dissolved being sufficient.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 651, 655, 656; Dec. Dig. § 290.*]

6. PARTNERSHIP (§ 292*)—DISSOLUTION—RIGHTS OF PARTNERS—EXECUTION OF NOTICE.

After the dissolution of a firm, neither partner could bind the other by the execution of a firm note to one having actual constructive knowledge of dissolution.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 661; Dec. Dig. § 292.*]

7. BANKS AND BANKING (§ 116*)—NOTICE TO OFFICERS—SUFFICIENCY AS TO BANK.

Notice of the dissolution of a firm, received by the officers and directors of a bank receiving its note, would constitute notice thereof to the bank.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 282–287; Dec. Dig. § 116.*]

8. EVIDENCE (§ 181*)—BEST EVIDENCE.

Evidence as to the contents of books in plaintiff's possession after the commencement of the action was not admissible, where no sufficient reason was shown why plaintiff could not have produced them at trial.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 600; Dec. Dig. § 181.*]

9. EVIDENCE (§ 182*)—BOOKS—IDENTIFICATION.

An identification of books, concerning which witness testified, as those of the "D. & S. Manufacturing Co.," by the label on the books and by the fact that they contained entries against Messrs. D. & S., officers of the corporation, was insufficient to identify the books, as those of the D. & S. Manufacturing Co., where the books were in the possession of strangers to them when the witness saw them.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 601–604; Dec. Dig. § 182.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

10. LIMITATION OF ACTIONS (§ 155*)—PAYMENTS.
   Payments of principal or interest upon an indebtedness must have been made with the debtor's knowledge and acquiescence in order to remove the bar of limitations.

   [Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 623–630; Dec. Dig. § 155.*]

Appeal from Trial Term, Cattaraugus County.

Action by the Union National Bank of Franklinville against Danford W. Dean, impleaded with another. From a judgment for plaintiff, and an order denying a new trial, defendant Dean appeals. Reversed, and new trial granted.

The action was commenced on the 15th day of October, 1901, by service of the summons upon the defendant Dean. The defendant Spring not having been served, and he having died during the pendency of the action, and no substitution of his representatives having been made, the trial proceeded against Dean practically as sole defendant; he alone having interposed a defense. The action was brought to recover the amount of two promissory notes, with interest, alleged to have been made by Dean & Spring as copartners, signed by the firm name, "Dean & Spring, by S. A. Spring," made payable to R. S. Litchfield, cashier, or order, and delivered to the Farmers' National Bank of Franklinville, N. Y. One of such notes was dated May 1, 1899, was for $1,475, and was made payable at said bank six months after date, with interest. The other note was dated June 1, 1899, was for $700, and was payable 12 months after date at said bank, also with interest. It is alleged, and is not disputed, that the name of the Farmers' National Bank of Franklinville, N. Y., was changed to that of the plaintiff, and that it is entitled to all the rights of the original holder and payee of said notes.

The defendant Dean by his answer denies, in substance, that at the times when the notes in question were executed and delivered the firm of Dean & Spring was in existence, or that Spring had any authority to bind the defendant Dean, by signing to the notes in question the name of Dean & Spring, and, in substance, that the copartnership of Dean & Spring had been dissolved, to the knowledge of the plaintiff, before it obtained and discounted the notes in question. The defendant Dean also interposed the defense of the statute of limitations.

Argued before McLENNAN, P. J., and KRUSE, ROBSON, FOOTE, and LAMBERT, JJ.

William W. Waring, of Franklinville, for appellant.
George E. Spring, of Franklinville, for respondent.

McLENNAN, P. J. In the year 1882 the defendants, Danford W. Dean and S. Arthur Spring, formed a copartnership under the name of Dean & Spring, for the purpose of conducting a lumber yard and planing mill at Franklinville, N. Y., and engaging in the business of contracting and building there and elsewhere. Dean attended to the operation of the mill and looking after outside contracts, which took him away from Franklinville a considerable portion of the time during the building season. Spring had charge of the office, kept the books, and looked after the financial affairs of the copartnership. They commenced to do business as copartners with the Farmers' National Bank soon after it started in business. In about the month of September, 1888, Dean & Spring sold out their entire business and plant to the Dean & Spring Manufacturing Company, a corporation or-

ganized for the purpose of taking over such business and plant. The copartnership retained only a few contracts in the course of completion and the outstanding book accounts. The copartnership owed some debts, and Spring had charge of collecting the money due the partnership and applying it on the debts. The unfinished contracts were all completed during or before the month of December, 1888, practically 10 years before the notes in suit were .executed and delivered.

Evidence was given on the part of the plaintiff to show that these notes were originally given by the partnership to the bank, and were unpaid at the time of the sale of the partnership business to the corporation, and were thereafter renewed from time to time by Spring, who assumed to sign the name of Dean & Spring to such renewals; the notes in suit being the last of such renewals. Plaintiff also gave evidence that, when the notes became due from time to time from 1888 to 1899, the interest was charged on the books of the bank to the Dean & Spring Manufacturing Company, and vouchers therefor mailed to that corporation, and that on the books of the Dean & Spring Manufacturing Company one-half of such interest was charged to the account of Dean and the other one-half to ,Spring; that both Dean and Spring were employed by the corporation at a monthly salary, and an individual account with each of them as to such salary, interest, and other matters was kept on the books of the .corporation.

No notice of the dissolution of the corporation was ever published in any newspaper, nor is there any claim made that notice in writing was ever given to the bank of such dissolution. That Dean frequently was in the bank from all the time.from 1888 down to 1900 is conceded, and he testifies that he never knew of the giving of the notes by Spring in the firm name until about 1883, when he had a talk with Adams, the cashier of the bank, who stated that he had a Dean & Spring note which he wanted Dean to sign; that he told the cashier that he did not know anything about any such note, and would not sign it; that the cashier then asked him if he wanted him to sue him, and he said he did; that, if he had any such note,.that was just what he wanted, and further told the cashier that he must not take any more notes with his name on them, unless he knew about them, or something to that effect; that he never received notice of protest of such notes at any time, and knew nothing further about them until after Spring left Franklinville, when he was again asked by the then cashier of the bank to sign such notes, and again refused. Dean does not claim to have personally given the bank any other notice of dissolution than as above stated.

It appears by the evidence that A. P. Adams, the cashier of the bank, knew that the firm of Dean & Spring had sold out their business to the Dean & Spring Manufacturing Company at the time it was done. N. F. Weed, a director of the bank, was one of the stockholders in the Dean & Spring Manufacturing Company. The same is true of A. O. Holmes, and also of Alfred Spring. Adams was a stockholder in the Dean & Spring Manufacturing Company. R. S. Litchfield, cashier of the bank from February, 1894, to April, 1904, knew that the firm sold out to the corporation, and that Mr. Dean and Mr.

Spring were thereafter employed by the corporation, and that the whole time of each was taken up by such employment. Litchfield testifies that he had no knowledge that they were engaged in transacting any business on their own account as a copartnership during any of the time from 1890 down to 1899.

[1, 2] Upon the trial the defendant Dean testified that at the time of the sale of the business of the partnership to the corporation he had a talk with his partner, Mr. Spring, upon the subject of the dissolution of the partnership, but was not allowed to state the conversation; the court holding that unless the partners were connected with the bank, or unless the conversation was shown to have been brought home to the bank, it could not be received in evidence. In this ruling we think the court was in error. The partnership relation is in the nature of a contract relation, and may be dissolved at any time by agreement; and, even although the partnership agreement be in writing, the dissolution may be proved by parol. Emerson v. Parsons, 46 N. Y. 560. Unless an actual dissolution of the partnership was made, the bank would be entitled to recover on the notes in question, even though the bank might have believed that there had been a dissolution prior to the inception of the notes. So that we think the court should have received the parol evidence of dissolution, in order that the jury might consider it, in connection with all the other facts, in determining whether the partnership had been dissolved before the notes in suit were made.

[3, 4] We are also of the opinion that the court should have permitted the jury to pass upon the question of whether or not the bank had notice of the dissolution of the partnership, if they found that a dissolution had been made. As to parties who have never previously dealt with a copartnership, constructive notice of the dissolution seems to be sufficient; but, as to those who have had dealings with the partnership, actual notice must be given, and it matters not how. the notice may be acquired. Knowledge of the fact is sufficient notice, in whatever manner the knowledge may have been acquired, and no formal notice in such case need be served.

[5] Likewise knowledge of facts which would lead a party to believe that the partnership has been dissolved is sufficient. Austin v. Holland, 69 N. Y. 571,. 25 Am. Rep. 246. The undisputed facts in the record tend strongly to show that the partnership had been dissolved. The sale of the business and good will of the firm to the corporation, the cessation of all business activity for many years, the devoting of the entire time of the partners to the work of the corporation upon a salary basis, would seem to point rather to a dissolution of the partnership than to its continuance.

[6, 7] It is elementary that if the partnership had been dissolved, and the bank had knowledge of such fact, or knowledge of such facts as would lead it to believe that the partnership had been dissolved, neither of the partners had the right to bind the other by the making of any new notes or the creation of other obligations in the firm name. If the jury found that sufficient notice of a dissolution came to the

knowledge of the officers and directors of the bank above named, that would constitute notice to the bank.

[8] The plaintiff was allowed to prove certain entries in books alleged to have been kept by the Dean & Spring Manufacturing Company, whereby the personal accounts of Mr. Dean and Mr. Spring were charged with each one-half of the interest upon the notes of which the notes in suit are renewals, without showing that the defendant Dean had knowledge of the fact that such charges had been made. While Dean was a director and the secretary of the corporation, he was not chargeable with constructive notice of what appeared upon such accounts, and the entries themselves were no more competent against him than against a stranger to the corporation. Rudd v. Robinson, 126 N. Y. 113, 26 N. E. 1046, 12 L. R. A. 473, 22 Am. St. Rep. 816. The books themselves were not produced, and no sufficient foundation was laid for the introduction of secondary evidence regarding them in any event. They were shown to have been in the possession of the plaintiff subsequent to the commencement of this action, and no sufficient reason was shown why they could not have been produced upon the trial.

[9] The witness Scott was permitted to testify that in 1901 at the bank he examined books purporting to be the books of the Dean & Spring Manufacturing Company, although he had never seen them before. He identified them by a label on the books, and by the fact that they contained entries against Mr. Dean and Mr. Spring. This was wholly insufficient to identify the books as the books of the Dean & Spring Manufacturing Company. A label is of little value in determining the nature of a book of accounts, unless, perchance, the label be in the handwriting or made at the direction of the person sought to be charged thereby. All of such proof was given over the objection and exception of the defendant Dean, and we think the court erred in admitting such evidence. As above pointed out, the entries in and of themselves were not sufficient to establish constructive notice against Dean, and, if upon a new trial it should be sought to show actual notice of such entries, the books themselves should be properly proven as such, and secondary evidence of their contents should not be received, unless a proper foundation be first laid therefor.

[10] Payments of principal or interest by the defendant Dean upon the indebtedness represented by the notes in suit, such as to remove the bar of the statute of limitations, must, in order to bind Dean, have been made with his knowledge and acquiescence.

For these reasons, the judgment and order appealed from must be reversed, and a new trial granted, with costs to the appellant to abide event. All concur.